Hitchcock, J.
The agreed case shows that the plaintiff is a white man, the defendant a black woman. The action being on a sealed bill, and the defendant wishing to put in issue the execution of the instrument, swore to the truth of her plea of non est factum. The plaintiff then offered in evidence the deposition of the subscribing witness, who was also a black woman. To this deposition objection is made, on the ground that the deponent was not a competent witness, on account of her color.
*201 It. is urged by tho counsel for the plaintiff that ho is entitled to judgment because the plea is verified by tho affidavit of a black person, who is not, on that account, a competent witness. If the affidavit of tho party was testimony in the case, the position would be correct. ■ But it is not testimony. It is merely a verification, of the plea, throwing the same burden upon the plaintiff, of proving his case, that was imposed on him by the rules of common law, and which rules are changed for the sake of convenience, by our statute, dispensing with proof in certain cases.
*But it is supposed that tho phraseology of section 9 of the act of April 1,1S07, to amend the act entitled “ an act to regulate black and mulatto persons,” is broad enough to exclude a black person from swearing oven to the truth of a plea at law, or of an answer in chancery. Although this court have ever given this section of law its full effect, according to its letter and spirit, still we are not disposed to extend it by construction. It is a law, if there bo any one in our statute book, which requires strict construction.
This section of tho statute is as follows: “No black or mulatto person or persons shall hereafter bo permitted to bo sworn or give evidence in any court of record, or elsewhere in this state, in any cause depending, or matter of controversy, where either party is a white person, or in any prosecution which shall be instituted in behalf of this state, against any white person.”
Now, it would seem to me there could be no doubt as to the intention of this section. The object is to prescribe an additional rule as to the competency of witnesses. And, in prescribing that rule, no attention is paid to the moral character of the witness. No matter how pure tho character, yet, if the color'is not right, tho man can not testify. The truth shall not bo received from a black man, to settle a controversy where a white man is a party. Let a man be Christian or infidel; let him be Turk, Jew, or Mahometan ; let him be of good character or bad; even let him be sunk to the lowest depths of degradation ; he may bo a witness .in our courts if he is not black. If a negro or mulatto, he must be excluded from giving evidence where a white man is a party. To my mind, the evident meaning of this section is _to preclude black and mulatto persons from giving evidence in a cause depending where a white man is a party. True, the statute says such persons shall not “ be permitted to be sworn.” But this *202, 203 must be taken in connection with what follows, in order to show for what reason they shall not be sworn. And the words immediately following are, “ or give evidence.” ■ They shall not be %worn to give evidence, nor give evidence without being sworn. Evidently showing that the subject operating upon the mind of the legislature was that of testifying in courts of justice and elsewhere.'
Suppose that we wore to give this section the construction insisted upon by the plaintiff, what would’ be the consequence? U would more completely put the black man in the power of the white. The white man may now plunder the negro of his property ; he may abuse his person ; he may take his life: Ho maj do this in open daylight, in the presence of multitudes who witness the transaction, and he must go acquitted, unless perchance there happens to be some white* man present. But, so construe this statute as that a black man can not, when sued upon a written instrument, swear to the truth of his plea, and you call in the courts of justice to aid and assist in carrying out a system of oppression. A white man would have nothing to do but to forge the note and commence his suit. The law says he shall not be bound to prove it, unless the plea is sworn to. But the plea can not be sworn to, because the defendant is a black man, and no other but the defendant himself can swear to the plea. The consequence is, the forger, through the instrumentality of a court of justice, reaps the fruits of his villainy, not in punishment, but in a judgment which enables him to deprive his neighbor of his property.
But, even if the letter and the spirit of the section would apply to a question like this, a majority of the court would not bo disposed to enforce it in a case like the present, for .the following reasons : This is a law of 1807. The act dispensing with proof in certain cases, is of more modern origin. And this act provides that, in a case like the present, a plaintiff shall not bo compelled to prove Ijhe execution of the instrument upon which the suit is based, unless the truth of the plea is verified by affidavit. A defendant may thus verify his plea, if he can do so consistently with truth. And his privilege is not confined to defendants of any particular color. It extends to all defendants. And a white man suing a black one, can not deprive him of it. If it was necessary, we should bold that, this Uoeing a subsequent legislative *204 provision, must control the former. But it seems to me clearly that it is not necessary.
In the opinion of a majority of the court, the defendant had a. right to swear to the truth of her plea, and the plaintiff must prove the execution of the note.
The next question in the case is, whether the deposition of Mary Shoemaker can be read in evidence. The plaintiff is a white man, the defendant a black woman. The defendant objects to this deposition because the deponent also is black. The law says that, as between such parties, “ no black or mulatto person or persons shall be permitted to be sworn or give evidence.” But it is said that this statute confers upon a white man a personal privilege. He may, at his election, permit or refuse the evidence of a black witness, and that his black opponent has no right to object to a witness of his own color. Such is not the law. By positive statutes the black man is an incompetent witness; and I have yet to hear that one party to a suit has any bettor right than the other to object to a witness on the ground of incompetency.
Can the other evidence offered in the case be received ? It is proposed, in the event that the deponent is not a competent witness, to prove her handwriting as a subscribing witness to the note; and this, not by a witness who is acquainted with the handwriting, but by one who saw her subscribe the deposition. This would be a very convenient way of making proof. We have the deposition of the subscribing witness before us, but will not receive it iu evidence, because she is black. But we take the testimony of a witness who will not swear that he is acquainted wilh the handwriting, not having seen the deponent write except when she signed the deposition, and permit him to swear to his belief that her signature to the note as a witness is genuine. This would be going groat lengths. As to the rule in such 'cases there is no difficulty. If there are subscribing witnesses to an instrument, those witnesses must be called, if within the jurisdiction of the court. If not, then you may prove their handwriting, or the handwriting of the maker of the instrument, by those who are acquainted with it. *But before the witness can testify, he must satisfy the court that he is acquainted with the handwriting of the party or witness whose signature he is called upon to prove.
In the opinion of the court, there is no evidence to sustain the *205 plaintiff’s action. Still, we have no rational doubt that he has good cause of action, and ought to recover this money. The only difficulty is to prove it; and the only reason he can not prove it is, that his witness is rendered incompetent by tbo operation of the law of 1807, and in this case that law produces precisely the same results as it does in every other case upon which it is brought to bear. In all my experience, both at the bar and as a member of this court, I can not recollect a single ease in which this law has been found subservient to the ends of justice. On the contrary, its uniform effect has been to prevent justice, both public and private.
There being no evidence to support the declaration, the plaintiff must bo nonsuited.
[To so much of the opinion of the court as decides that a blacker mulatto person can, by affidavit to the truth of a plea, in an action upon a promissory note, compel the plaintiff to prove its execution, Read, J., dissented.]